IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TERRY BUTLER,** : | |
| **Plaintiff,** : | CIVIL NO. 3:CV-04-0383 |
| v. : | (Judge Caputo) |
| **ROBERT W. MEYERS, et al.,** : | |
| **Defendants.** : | |

## MEMORANDUM

### I.   Introduction

Terry Butler, an inmate confined at the Rockview State Correctional Institution in Bellefonte, Pennsylvania, commenced this action with a *pro se* civil rights complaint filed pursuant to the provisions of 42 U.S.C. § 1983. Thereafter, Plaintiff filed an amended complaint (Doc. 33). Named as Defendants are: (1) Pennsylvania Department of Corrections Chief Grievance Coordinators Thomas James and Sharon Burks; (2) SCI-Rockview Superintendents Robert W. Meyers and Franklin J. Tennis; (3) SCI-Rockview Medical Director Dr. John Symons; (4) SCI-Rockview Assistant Librarian Donna L. Alters; and (5) Corrections Officers Paul Kensinger and Shawn E. Myers. Plaintiff alleges that: (a) Kensinger and Myers acted with deliberate indifference to Plaintiff's physical safety during an altercation between Plaintiff and another inmate on September 5, 2000; (b) Symons was deliberately indifferent to Plaintiff's medical needs; (c) Meyers, James and Alters have denied Plaintiff meaningful access to the courts; (d) Meyers has failed to properly train staff to prevent denial of access to the courts; and (e) Tennis and Burks have failed to properly supervise their staff to prevent denial of access to the courts. By an Order dated March 28, 2005 (Doc. 47), Symons was dismissed from the action.

Presently pending are the Defendants' motions (Docs. 38 and 48) to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The motions have been briefed, and they are ripe for decision.  For the reasons set forth below, Defendants' motions will be granted.

## II.     Background

Plaintiff's amended complaint (Doc. 33) alleges that he was assaulted by another inmate at SCI-Rockview on September 5, 2000, and Myers and Kensington could have prevented the assault but failed to do so.  Plaintiff also claims that SCI-Rockview officials have implemented and/or failed to amend policies that limit Plaintiff's right of access to the courts.

On September 5, 2000, at approximately 8:40 p.m., Kensington and Myers responded to a report of an inmate fight. (Doc. 33 at ¶ 10.)  When Myers arrived, he saw inmate James Brown ("Brown") attempting to separate Plaintiff and inmate Edward Passamonte ("Passamonte").  Brown and Plaintiff told Myers that Plaintiff had been attacked by multiple inmates.  The two also informed Myers and Kensington that one of the attackers had used a sock stuffed with soap as a weapon, and that attacker had mingled with the crowd when Myers and Kensington arrived.

A number of inmates then gathered in the television room and, in the presence of Myers and Kensington, began threatening Plaintiff.  Passamonte was handcuffed and led from the area by unidentified corrections officers, and Myers handcuffed Plaintiff's hands behind his back.  Myers and Kensinger then positioned Plaintiff between them and led him toward the television room.  As they proceeded, inmates Keil and Harper stepped out of the crowd, and Plaintiff identified Keil as the inmate that attacked him with a soap filled sock.

2

Myers and Kensinger led Plaintiff into the television room, where they instructed him to stop and face the wall.  Plaintiff complied, and as he faced the wall he was attacked by Keil and Harper.  Myers and Kensinger ordered Keil and Harper to stop, but they did not physically intervene until other corrections officers arrived to assist them.  As a result of the altercation, Plaintiff was convicted of two misconducts for fighting, and he was sentenced to 150 days disciplinary confinement.

As noted previously, Plaintiff also claims that implementation of three SCI-Rockview policies have hindered his Constitutional right to meaningful access to the courts.  The first of these challenged policies is the library sign-up procedure.  To utilize the prison library, inmates are required to sign up for privileges between 7:20 a.m. and 8:00 a.m., between 1:30 p.m. and 2:00 p.m., or at 6:30 p.m.  However, space is limited to five (5) inmates at the first two periods and three (3) inmates in the last period.  Because the morning line is often very long, and includes inmates seeking other services, Plaintiff claims that an inmate seeking to sign up in the morning period must sometimes choose between signing up for library privileges and having breakfast.  He claims that this system is inherently inadequate to insure a prisoner's access to the courts.

Further, SCI-Rockview has a policy limiting inmate paper purchases to twenty-five (25) sheets weekly.  Plaintiff claims that this limitation "has made it virtually impossible for the Plaintiff to prepare his actual innocence petition for the court in violation of his [right to access the courts]." (Doc. 33 at ¶ 70.)  Plaintiff's third challenge to SCI-Rockview policies relates to the assistant librarian's no talking policy, which he also claims infringes on his right of access to the courts.

In addition to the SCI-Rockview officials directly involved in the aforementioned

3

claims, Plaintiff alleges that the supervisory officials are liable for failure to address and remedy the foregoing problems, and the grievance review officers are liable for their failure to grant Plaintiff's grievances regarding the alleged Constitutional violations. Defendants claim that Plaintiff's complaint should be dismissed.

**III.     Discussion**

### A.  Motion to Dismiss Standard

In rendering a decision on a motion to dismiss, the Court must accept the Plaintiff's allegations as true. *White v. Napoleon*, 897 F.2d 103, 106 (3d Cir. 1990). In *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996), the United States Court of Appeals for the Third Circuit added that when considering a motion to dismiss, based on a Rule 12(b)(6) argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Moreover, a motion to dismiss may only be granted if there is no reasonable reading of the facts that would entitle Plaintiff to relief. *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004). A complaint that does not establish entitlement to relief under any reasonable interpretation is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002). Nevertheless, the Court is mindful that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### B.     Section 1983 Standard

To state a viable § 1983 claim, Plaintiff must establish (1) that the alleged wrongful conduct was committed by a person acting under color of state law, and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or

laws of the United States. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). Both elements must be present to sustain a § 1983 action, and Plaintiff fails to satisfy the second. It is undisputed that Defendants are state actors, but Defendants contend that Plaintiff fails to allege deprivation of a Constitutional or statutory right, privilege, or immunity. The Court agrees.

### C. Deliberate Indifference

Plaintiff claims that Myers and Kensinger were deliberately indifferent to his safety on September 5, 2000, when they failed to protect him from assault by another prisoner. Specifically, he claims that Kensinger and Myers "acted with deliberate indifference to the Plaintiff's safety, by their failure to exercise reasonable safety" to prevent assault on Plaintiff by another prisoner. (Doc. 33 at 5.) The Constitutional issue central to this claim is the Eighth Amendment requirement that prison officials provide medical care, and make reasonable efforts to assure prisoner safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). That duty is violated when prison officials know of and disregard an excessive risk to inmate health or safety. *Id*. at 837. Defendants argue that Plaintiff's deliberate indifference claim is barred by the applicable statute of limitations.

### D. Statute of Limitations

In reviewing the applicability of the statute of limitations to an action filed pursuant to §1983, a federal court must apply the appropriate state statute of limitations which governs personal injury actions. *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995); *Kingvision Pay-Per-View, Corp., Ltd. v. 898 Belmont, Inc.*, 366 F.3d 217, 220 (3d Cir. 2004). Pennsylvania's applicable personal injury statute of limitations is two years. *See* 42 Pa.C.S. § 5524(7); *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993). The statute of

limitations "begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the Section 1983 action." *Gentry v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991) (citations omitted).

Plaintiff knew of the alleged failure to protect him from assault on September 5, 2000. Plaintiff did not file his complaint until February 23, 2004, over three years later. Accordingly, Plaintiff's deliberate indifference claim is barred by Pennsylvania's controlling statute of limitations, and Defendants' motion to dismiss this claim will be granted.

### E. Access to the Courts

Plaintiff alleges that institutional policies have denied him meaningful access to the courts. Specifically, he claims that restrictive library sign-up procedures, the library no-talking policy, and prisoner paper purchase limitations of twenty-five (25) sheets weekly have operated to deny him his right of meaningful access to the courts. It is well-settled that prison inmates have a Constitutional right of meaningful access to law libraries, legal materials or legal services. *Bounds v. Smith*, 430 U.S. 817, 821-25 (1977). Failure to provide inmates with legal research material or trained legal assistance can establish a Constitutional violation. *Gluth v. Kangas*, 951 F.2d 1504, 1507 (9th Cir. 1991). The Supreme Court has recognized that:

> "[t]he right that *Bounds* acknowledged was the (already well-established) right of *access to the courts* . . . Although [*Bounds*] affirmed a court order requiring North Carolina to make law library facilities available to inmates, it stressed that this solution was merely 'one constitutionally acceptable method to assure meaningful access to the courts. . . .'"

*Lewis v. Casey*, 518 U.S. 343, 350-51 (1996).

However, "*Bounds* does not guarantee inmates to transform themselves into

litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. *Lewis*, 518 U.S. at 351-54.

Moreover, "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance . . . ." *Lewis*, 518 U.S. at 351-54. In order to set forth a viable claim under *Bounds*, a plaintiff must **allege** an actual injury to his litigation efforts; to establish actual injury, an inmate plaintiff must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded. *Id.* at 349. This pleading requirement of actual injury stems "from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches . . . It is the role of courts to provide relief to claimants . . . who have suffered , or will imminently suffer, actual harm . . . ." *Id.*

Although Plaintiff alleges that an effort to challenge his conviction was impeded, the allegation does not satisfy the requirements of *Bounds*. Plaintiff claims that he suffered a "default of his appeal to the 3rd Circuit Court of Appeal[s] from the decision of the District Court . . . where he was appealing from his conviction and sentence claiming actual innocence." (Doc. 33 at ¶ 49.) However, he fails to attribute this default to any of the challenged policies.[1] Instead, Plaintiff alleges that the "default of his appeal" was caused by "his arbitrary placement in the [Restricted Housing Unit] . . . ." (*Id.*) Consequently, since Plaintiff fails to allege an actual injury occasioned by the objectionable policies, he fails to

---

[1] The Court notes that the limitation on inmate paper purchases has not prevented Plaintiff from filing documents in this case totaling nearly five hundred (500) pages.

7

identify any deprivation of access to the courts which has been caused by Defendants' conduct.  Thus, Plaintiff has failed to satisfy the second prerequisite for a §1983 action on this claim, and even the most liberal and accommodating interpretation of the Plaintiff's complaint will not redeem the pleading.  Accordingly, Defendants' motion to dismiss this claim will be granted.  An appropriate Order follows.


Dated: October 12, 2005 /s/ A. Richard Caputo
A. RICHARD CAPUTO
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRY BUTLER,** | : | |
| | : | |
| Plaintiff, | : | **CIVIL NO. 3:CV-04-0383** |
| | : | |
| v. | : | **(Judge Caputo)** |
| | : | |
| **ROBERT W. MEYERS, et al.,** | : | |
| | : | |
| Defendants. | : | |

## O R D E R

**AND NOW, THIS 12th DAY OF OCTOBER, 2005,** in accordance with the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendants' motions to dismiss (Docs. 38 and 48) Plaintiff's amended complaint are **GRANTED.**

2. The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff, and the Clerk of Court shall mark this case closed.

3. Any appeal from this Order shall be deemed frivolous, without probable cause, and not taken in good faith.

     /s/ A. Richard Caputo
     A. RICHARD CAPUTO
     United States District Judge